Filing # 57201890 E-Filed 06/01/2017 05:13:41 PM

IN THE COUNTY COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR HERNANDO COUNTY, FLORIDA

SALLIE A. CUMMINGS, individually,

       Plaintiff,

Case No.

v.

RUSHMORE LOAN MANAGEMENT
SERVICE, a foreign limited liability company,
AND U.S. BANK, N.A. AS TRUSTEE FOR
RMAC TRUST, SERIES 2016-CTT,

       Defendants.
_____/

## COMPLAINT

Plaintiff, Sallie A. Cummings, by and through the undersigned counsel, hereby sues Defendants, Rushmore Loan Management Services, LLC and U.S. Bank, N.A. as Trustee for the RMAC TRUST, SERIES 2016-CTT, and alleges as follows:

1. This is an action for damages brought by Sallie A. Cummings against U.S. Bank, N.A. as Trustee for the RMAC TRUST, SERIES 2016-CTT and Rushmore Loan Management Services, LLC, for repeated violations of the Florida Consumer Practices Act, Fla. Stat. § 559.72, the Federal Debt Collection Practices Act, 15 U.S.C. § 1692a, *et. seq.*, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*

2. Jurisdiction and venue for purposes of this action are proper in Hernando County, Florida, and are conferred by Fla. Stat. § 559.77, 15 U.S.C. § 1692(d), and 47 U.S.C. § 227(b)(3).

3. At all times material herein, the conduct of Defendants complained of below, occurred in Hernando County, Florida.

4. At all times material herein, Sallie Cummings is a "debtor" or "consumer" as defined by § Fla. Stat. § 559.55(8) and 15 U.S.C. § 1692a(3).

5. At all times material herein, Cummings is a "person" as defined by the TCPA, 47 U.S.C. § 153(39), and a subscriber to cellular telephone services within the United States.

6. Defendant, Rushmore Loan Management Services, LLC ("Defendant" or "Rushmore"), is a Foreign Limited Liability Company authorized to conduct business in Florida; and is engaged in such business of regularly and systematically collecting debts within Hernando County, Florida.

7. Defendant, U.S. Bank, N.A. as Trustee ("Defendant" or "U.S. Bank "), is a national banking institution authorized to conduct business in Florida; and is engaged in such business of regularly and systematically collecting debts within Hernando County, Florida.

8. At all times material herein, Rushmore is a "creditor" as defined by Fla. Stat. § 559.55(5). Specifically, Rushmore attempted to collect a consumer debt related to a certain mortgage and promissory note alleged to be to U.S. Bank, N.A.

9. At all times material herein, U.S. Bank is a "creditor" as defined by Fla. Stat. § 559.55(5). Specifically, U.S. Bank directly or indirectly, attempted to collect a consumer debt related to a certain mortgage and promissory note.

10. At all times material herein, Rushmore is a "debt collector" within the definition established by 15 U.S.C. § 1692(a)(6) and Fla. Stat. § 559.55(7). The principal purpose of Rushmore is to collect, directly or indirectly, debts owed or due to another, using the mail and telephone.

11. At all times material herein, U.S. Bank is a "debt collector" within the definition established by 15 U.S.C. § 1692(a)(6) and Fla. Stat. § 559.55(7). The principal purpose of U.S. Bank is to collect, directly or indirectly, debts owed or due using the mail and telephone.

12. Rushmore is a "consumer collection agency" within the definition established by the FCCPA, Fla. Stat. § 559.55(3) in that it is a business entity engaged in the business of soliciting consumer debts for collection or of collecting consumer debts.

13. U.S. Bank is a "consumer collection agency" within the definition established by the FCCPA, Fla. Stat. § 559.55(3) in that it is a business entity engaged in the business of soliciting consumer debts for collection or of collecting consumer debts.

14. Rushmore is a "person" within the meaning of the FCCPA, and in particular as it is used in Fla. Stat. § 559.72.

15. U.S. Bank is a "person" within the meaning of the FCCPA, and in particular as it is used in Fla. Stat. § 559.72.

16. At all times material herein, Defendants' conduct with regard to the Debt, complained of below, qualifies as "communication" as defined by Fla. Stat. § 559.55(2) and 15 U.S.C. § 1692(a)(2).

17. At all times material herein, Rushmore has used, controlled, and/or operated "automatic telephone dialing systems" as defined by the TCPA 47 U.S.C. § 227(a)(1) and 47 C.F.R. 64.1200(f)(1).

18. The Federal Communications Commission (FCC) was given the authority to issue orders implementing the TCPA. The FCC has issued an order that states:

> The creditors are in the best position to have records kept in the usual course of business showing such consent, such as purchase agreements, sales slips, and credit applications. Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent. Similarly, a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. **Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call.**

*In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 565 (F.C.C. 2007), paragraph 10. (Footnotes omitted.).

19. U.S. Bank is responsible for any violation of the TCPA committed by Rushmore, as a third party collector on U.S. Bank's behalf, including all telephone calls placed by Rushmore on behalf of U.S. Bank to Plaintiff, in an attempt to collect upon the Debt.

## FACTUAL ALLEGATIONS

20. Plaintiff, Sallie A. Cummings ("Plaintiff" or the "Cummings"), is woman who is almost in her seventies and who resides in Hernando County, State of Florida.

21. On January 16, 2008, Stockton Turner, LLC recorded a Mortgage against Cummings' property by virtue of a Promissory Note dated January 10, 2008 (the "Debt", "consumer Debt", or "alleged Debt" as appropriate).

22. The Mortgage was purportedly subsequently assigned from Stockton Turner, LLC to Flagstar Bank, and eventually to Defendants.

23. The Debt is a consumer debt incurred primarily for personal, household or family use. The FCCPA defines "debt" as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." Fla. Stat. § 559.55(6).

24. In or about March 2012, an agent of Flagstar Bank contacted Cummings by telephone in an attempt to collect upon the Debt. During said call Cummings informed said agent that she was represented by legal counsel with respect to the Debt and provided legal counsel's name and contact information.

25. After foreclosure proceedings were initiated against her by Flagstar Bank, Darryl Johnston, Esq. of Johnston & Sasser, P.A., sent correspondence to Flagstar Bank's legal counsel on May 21, 2012. The correspondence further informed Flagstar Bank that Cummings was represented by legal counsel with respect to the Debt, provided legal counsel's contact

information, proposed a manner in which to resolve the alleged Debt, and to cease all direct communications with Cummings.

26. On or about March 6, 2014, Cummings further retained legal counsel Andrew Lyons, Esq., to represent her with respect to the Debt and defend the Debt Collection Action and related debt collection and Mr. Lyons filed his appearance as counsel on behalf of Cummings with the relevant Court and Flagstar Bank's legal counsel.

27. On or about November 18, 2014, Mr. Lyons sent correspondence to Flagstar Bank's legal counsel who further informed Flagstar Bank that Cummings was continuously represented by legal counsel with respect to the Debt, provided legal counsel's contact information, proposed a manner in which to resolve the alleged Debt, and to cease all direct communications with Cummings.

28. Flagstar Bank purportedly subsequently transferred the Debt, and all servicing thereto.

29. On May 7, 2015, Mr. Lyons forwarded his prior November 18, 2014 correspondence to the current servicer, further informing the servicer that Cummings is represented by legal counsel with respect to the Debt and provided legal counsel's contact information, and to cease all direct communications with Cummings.

30. Upon information and belief, upon every servicing transfer thereafter, Cummings, or her legal counsel verbally and explicitly withdrew any consent for Cummings to be contacted directly by mail or telephone with respect to the Debt.

31. On January 1, 2017, the Debt was purportedly transferred to Rushmore to collect on behalf of U.S. Bank.

32. At the time of the transfer, Rushmore and U.S. Bank, and its representatives, agents, or employees were advised of the Debt Collection Action, that Cummings is represented by legal counsel, the contact information for such legal counsel, and were provided business

records and servicing files which included all of the aforementioned communications from Plaintiff and her legal counsel.

33. Notwithstanding Cummings having retained legal counsel and Rushmore and U.S. Bank having knowledge of this circumstance, Defendants have willfully, knowingly, and/or negligently contacted Cummings directly on multiple occasions for the purposes of collecting on the consumer Debt.

34. In or about February 2017, Cummings received a call from a representative named Rubin who indicated that he was an employee of Rushmore.

35. During said call, Cummings again informed Rubin from Rushmore that she was represented by legal counsel with respect to the Debt, provided legal counsel's contact information, that all future communication with regard to the Debt be directed to legal counsel, and requesting that Rushmore cease communicating with Cummings directly.

36. Cummings has been continuously represented by legal counsel with respect to the Debt from at least March 2012 to the present, and Defendants, and its predecessors in interest, have always had actual knowledge of Cummings' representation by legal counsel at all times relevant hereto.

37. On at least five separate occasions Defendants, and its predecessors in interest, were informed directly by Cummings or her legal counsel that Cummings is represented with respect to the Debt and to cease and desist all communications directly with Cummings.

38. Notwithstanding Cummings having retained legal counsel and Defendants having knowledge of this circumstance, and having received a specific request to cease and desist all communications, Rushmore has willfully and knowingly contacted Cummings directly on multiple occasions for the purposes of collecting on the consumer Debt on behalf of U.S. Bank.

39. Notwithstanding Cummings having retained legal counsel and Defendants having knowledge of this circumstance, and having received a specific request to cease and desist all

communications, Defendants have acted negligently in contacting Cummings directly on multiple occasions for the purposes of collecting on the consumer Debt.

40. Rushmore has contacted Cummings by mail no less than seven times for the purposes of collecting on the alleged debt for U.S. Bank, by requesting that Plaintiff pay a certain amount of money by a date certain, assessing a late fee, and threatening to assess additional late fees if such amount is not paid, in direct contravention of Defendant's knowledge of Plaintiff's representation by legal counsel and request to cease and desist communications.

41. On or about January 30, 2017, Rushmore sent Cummings a demand for payment by mail, for a sum certain of $208,953.52. The demand for payment requested payment by a date certain; otherwise a late fee of $85.96 will be charged.

42. On or about January 31, 2017, Rushmore sent Cummings a notice of servicing transfer. The notice reflected a payment due date of November 1, 2011 and $409,603.78 as the total amount of debt, which was comprised of $4,641.84 in late charges.

43. By charging or threatening to charge a late fee on a debt which has been accelerated since November 5, 2015, Defendants are claiming, attempting or threatening to assert the existence of a legal right to charge late fees on an accelerated consumer debt when Defendant has knowledge that such right does not exist.

44. As of November 1, 2016, the debt has allegedly been in default for a period of five years; however, Defendants sent correspondence, purportedly to comply with the Federal Debt Collection Practices Act, which demanded payments in excess of the statute of limitations.

45. Any demands made by Defendants for monthly installment payments due more than five years prior to such statement is an attempt to collect an amount not permitted by law. Such statement should include special disclosures to the consumer such as any promise to pay or payment upon the debt will restart the statute of limitations, or that payment is not required on a portion of the debt.

46. In addition to contacts by mail, Rushmore made calls to Cummings' cellular and home telephone numbers, 352-346-6828 and 352-799-2889, using an automatic telephone dialing system ("ADTS"), a predictive telephone dialing system ("PTDS"), or an artificial or pre-recorded voice ("APV").

47. Cummings is the owner, regular user, and possessor of telephone numbers 352-346-6828 and 352-799-2889.

48. At no time herein did Rushmore have Cummings' prior express consent to call her telephone numbers using an ATDS, PTDS, or APV.

49. Further, if Rushmore contends it had such consent, such consent was revoked to make auto-dialed debt collection calls the moment Rushmore was advised of Cummings' representation by legal counsel with respect to the Debt and to cease and desist.

50. The aforementioned calls were not made for any emergency purpose.

51. Rushmore has contacted Cummings by telephone using an ATDS, PTDS, or APV, for the purposes of collecting on the alleged debt and in direct contravention of Rushmore's knowledge of Plaintiff's representation by legal counsel and request to cease and desist communications.

52. Pursuant to Cummings' March 2012, May 21, 2012, March 6, 2014, November 18, 2014, May 7, 2015, and February 2017 communications, Rushmore was provided specific notice to cease and desist, that Cummings did not want to be contacted via her telephone, making these automated calls and prerecorded and/or synthesized messages to Cummings' telephone a willful violation of the TCPA.

53. All calls and messages which occurred after Rushmore took over servicing this consumer Debt and attempting to collect on the consumer Debt were in made in willful violation of the TCPA because Rushmore knew it was making a call to Cummings cell phone, knew that

the system used to make the call qualifies as an autodialer, and knew that it did not have consent to make the autodialed call.

54. Upon information and belief, Rushmore used the services of a third party company to aid them in making all or some of the calls complained-of herein.

55. Rushmore's repeated autodialed collection calls to Cummings cellular telephones, within the last four years prior to filing this complaint, were illegal third-party attempts to collect this debt in violation of the TCPA, 47 U.S.C. § 227 *et seq*.

56. Rushmore has actual knowledge of Cummings having retained legal counsel to represent them with respect to this consumer debt; however, Rushmore continued to contact Cummings willfully, wantonly, maliciously, and negligently without regard to the effect on Parks.

57. Rushmore's continued contact with Cummings despite notice of legal representation and active litigation was a willful violation of the FCCPA.

### *Respondeat Superior Liability*

58. The acts and omissions of Rushmore, and other debt collectors employed as agents by Rushmore, who communicated with Cummings as described herein, were committed within the time and space limits of their agency relationship with their principal, U.S. Bank.

59. The acts and omissions by these Rushmore and its employees were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by U.S. Bank in collecting consumer debts.

60. By committing these acts and omissions against Cummings, Rushmore and its employees were motivated to benefit their principal, U.S. Bank.

61. U.S. Bank is therefore liable to Cummings through the Doctrine of Respondeat Superior for the intentional and negligent acts, torts, errors, and omissions done in violation of

state and federal law by its collection employees, including but not limited to violations of the FDCPA, FCCPA, and TCPA in their attempts to collect this Debt from Cummings.

## DAMAGES

62. Specifically Defendants have acted maliciously by engaging in a course of conduct intended to harass Cummings.

63. Defendants are subject to and have violated the provisions of Fla. Stat. §§ 559.72(7), 559.72(9), and 559.72(18) by willfully communicating with Cummings by telephone and mail with such frequency as can reasonably be expected to harass Cummings –despite Cummings' representation by legal counsel.

64. Cummings has sustained damages as defined by Fla. Stat. § 559.77.

65. As a direct and proximate result of the conduct and acts of Defendants mentioned above, Cummings' excellent credit rating has been impaired and Cummings have suffered severe pain and distress of body and mind and great mental anguish, sleeplessness, anxiety, anger, embarrassment, humiliation and shame, all to Cummings' damage.

66. These autodialed collection calls have eliminated Cummings' right to be left alone, the peace and solitude that Cummings would otherwise have had, constitutes unauthorized use of and interferes with Cummings' cellular telephone service for which Cummings paid money.

67. Rushmore's persistent autodialed calls eliminated Cummings right to be left alone.

68. These persistent autodialed collection calls eliminated the peace and solitude that the Cummings would have otherwise had.

69. Rushmore's actions constituted the unauthorized use of, and interference with the Cummings cellular telephone service for which Cummings paid money.

70. Cummings was charged for each call that Rushmore made to Cummings' cellular telephone.

71. Cummings has incurred reasonable attorneys' fees in pursuit of this enforcement action, and will seek recovery of same against Defendants, and as allowed under Fla. Stat. § 559.77(2).

72. Pursuant to Florida Statute § 559.77, Cummings is entitled an award of up to $1,000.00 statutory damages against each Defendant per independent, temporally-displaced violation, plus actual damages, and an award of attorneys' fees and costs to Cummings should she prevail in this matter.

73. Pursuant to 15 U.S.C. § 1692k, Cummings is entitled an award of up to $1,000.00 statutory damages against each Defendant per independent, plus actual damages, and an award of attorneys' fees and costs to Cummings should she prevail in this matter.

74. Pursuant to 47 U.S.C. § 227(b)(3), Cummings is entitled to an award of up to $500 or actual damages, whichever is greater, for each telephone call made using any automatic telephone dialing system or an artificial or pre-recorded voice to her cellular telephone in violation of the TCPA.

75. Additionally, pursuant to 47 U.S.C. § 227(b)(3), the trial court may increase damages up to three times, or $1,500.00, for each telephone call made using any automatic telephone dialing system or an artificial prerecorded voice to Cummings' cellular telephone in willful or knowing violation of the TCPA.

76. All conditions precedent to the filing of this action have occurred or have been waived by Defendants.

### *Count I: Violation of the Florida Consumer Collection Practices Act, Fla. Stat. 559.72 et seq. as to both Defendants*

77. Plaintiff re-alleges paragraphs 1-76 and incorporates the same by reference as if fully restated herein.

78. Each Defendant is subject to and has violated the provisions of Fla. Stat. § 559.72(18) by intentionally and repeatedly communicating with Plaintiff in an attempt to collect a debt after being given actual notice that Plaintiff was represented by legal counsel with respect to the Debt.

79. Each Defendant has willfully communicated with Plaintiff with such frequency as can reasonably be expected to harass Plaintiff in violation of Fla. Stat. § 559.72(7).

80. Each Defendant has engaged in other conduct which can reasonably be expected to abuse or harass Plaintiff in violation of Fla. Stat. § 559.72(7).

81. Each Defendant has sought to claim, attempt, or threaten to enforce a debt which Defendant knows is not legitimate, or is asserting the existence of some legal right to collect upon a debt that is more than five years old, in violation of Fla. Stat. § 559.72(9), by seeking to collect monthly installment payments due beyond Florida's five year statute of limitations and by seeking to assess a late charge on an accelerated debt.

82. Each Defendant, directly or through agents, acted with actual malice or deliberate oppression, or willfully, or with such gross negligence as to indicate a wanton disregard of the rights of Plaintiff, including Plaintiff's right to be left alone.

83. As a direct and proximate result of each Defendant's actions, Plaintiff has sustained damages as defined by Fla. Stat. 559.77.

**WHEREFORE,** Plaintiff demands trial by jury and requests judgment:

a. Enjoining Defendants from any and all further illegal collection practices;

b. Statutory damages of $1,000 or actual damages, whichever is greater;

    c.    For punitive damages;

    d.    For attorneys' fees and costs; and

    e.    For such other and further relief as the court deems appropriate.

***Count II: Violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. as to both Defendants***

84. Plaintiff re-alleges paragraphs 1-76 and incorporates the same by reference as if fully restated herein.

85. Each Defendant is subject to and has violated the provisions of 15 U.S.C. § 1692c(a)(2) by communicating with Plaintiff despite Defendant's knowledge that Plaintiff is represented by legal counsel with respect to the Debt, and despite having legal counsel's contact information.

86. Each Defendant is subject to and has violated the provisions of 15 U.S.C. § 1692c(c) by communicating with Plaintiff despite Plaintiff's request to cease communications for purposes of collecting the Debt.

87. Each Defendant possessed actual knowledge of Plaintiff's representation by legal counsel with respect to the Debt and possessed actual knowledge of legal counsel's contact information.

88. Despite the above referenced knowledge, Defendants sent Plaintiff at least seven collection letters and placed several phone calls in its attempt to collect the Debt.

89. As such, Defendants communicated with Plaintiff despite possessing actual knowledge that Plaintiff was represented by legal counsel and knowledge of legal counsel's contact information.

90. Each Defendant is subject to and has violated 15 U.S.C. § 1692d(5) by repeatedly communicating with Plaintiff with such frequency and with such intent to annoy, abuse, or harass Plaintiff.

91. Defendant is also subject to and has violated 15 U.S.C. § 1692e(2)(A), 1692e(10) and 1692f(1), by falsely representing the character, amount, or legal status of the Debt in seeking to claim the existence of some legal right to collect upon a debt that is more than five years old, and by seeking to assess a late charge on an accelerated debt without otherwise informing Plaintiff that any payment or promise to pay could remove any potential statute of limitations defense.

92. Each Defendant, directly or through agents, acted with actual malice or deliberate oppression, or willfully, or with such gross negligence as to indicate a wanton disregard of the rights of Plaintiff.

93. As a direct and proximate cause of each Defendant's actions Plaintiff has sustained damages as defined by 15 U.S.C. § 1692k.

**WHEREFORE,** Plaintiff demands trial by jury and request judgment:

a. Enjoining Defendants from any and all further illegal collection practices;

b. Statutory damages of $1,000 or actual damages, whichever is greater;

c. For punitive damages;

d. For attorneys' fees and costs; and

e. For such other and further relief as the court deems appropriate.

***Count III: Violations of the Telephone Consumer Protection Act as to both Defendants***

94. Plaintiff re-alleges paragraphs 1-76 and incorporates the same by reference as if fully restated herein.

95. Within the four year period immediately preceding this action, Defendants directly or through agents, have made numerous calls to Plaintiff's telephone number, assigned to a cellular telephone service, without prior express consent and without an emergency purpose, using an automated dialing system, using an artificial or prerecorded voice, or using both; or has

made such calls to a service for which the called party is charged for the call, in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), and 47 C.F.R. 64.1200 (a)(1)(iii).

96.     At no time herein did Defendants have Plaintiff's prior express consent to call Plaintiff on her cellular telephone.

97.     Further, even if Plaintiff did have such consent, such consent was revoked when Defendants were advised that Plaintiff was represented by legal counsel with respect to the Debt and when Plaintiff verbally and explicitly requested that Defendants stop calling her and revoked any prior express consent for Defendants to call Plaintiff's cellular telephone using an ATDS, PTDS, or APV.

98.     Despite the lack of any prior express consent, Defendants placed calls to Plaintiff's cellular telephone using an ATDS, PTDS, or APV.

99.     The telephone calls complained of herein are the result of repeated, willful and knowing violation of the TCPA.

100.    The acts and/or omissions of Defendants at all times material and relevant hereto, as described in this complaint, were done unfairly, unlawfully, intentionally, deceptively and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

101.    Plaintiff is also entitled to injunctive relief enjoining Defendants from further violations of the TCPA pursuant to 47 U.S.C. § 227(b)(3)(a).

102.    As a direct and proximate result of the conduct and acts of Defendants mentioned above, Plaintiff has suffered severe pain and distress of body and mind and great mental anguish, sleeplessness, anxiety, anger, embarrassment, humiliation and shame, all to Plaintiff's damage.

103.    These autodialed collection calls have eliminated Plaintiff's right to be left alone, the peace and solitude that Plaintiff would otherwise have had, constitutes unauthorized use of and interferes with Plaintiff's telephone service for which Plaintiff paid money.

104. Under 47 U.S.C. § 227(b)(3)(B), the Plaintiff is entitled to statutory damages under the TCPA of $500.00 per telephone call made to Plaintiff.

105. Defendant willfully and knowingly violated the TCPA, and as such the Plaintiff is entitled to $1,500.00 per telephone call made to the Plaintiff pursuant to 47 U.S.C. § 227(b)(3).

**WHEREFORE,** Plaintiff demands trial by jury and requests judgment:

a. Enjoining Defendants from any and all further calls to the Plaintiffs' cellular telephone using an automatic telephone dialing system

b. Statutory damages of $500 per call pursuant to 47 U.S.C. § 227(b)(3)(B) against Defendant and for Plaintiffs;

c. Statutory damages of $1,500 per call pursuant to 47 U.S.C. § 227(b)(3) against Defendant and for Plaintiffs;

d. For attorneys' fees and costs; and

e. For such other and further relief as the court deems appropriate.

Respectfully submitted,

THE LYONS LAW GROUP, P.A.

/s/ Rebbecca A. Goodall
Andrew M. Lyons, Esq.
Florida Bar No.: 0011288
Rebbecca A. Goodall, Esq.
Florida Bar No.: 0115344
4103 Little Road
New Port Richey, FL 34655
(727) 375-8900
(727) 375-2334 (fax)
Email Service: pleadings@lyonslawgroup.com
Attorneys for Plaintiff,
Sallie A. Cummings